Mark A. Nadeau (Bar No. 011280)
mark.nadeau@dlapiper.com
Leon Medzhibovsky (*pro hac vice*)
leon.m@dlapiper.com
Allison L. Kierman (Bar No. 024414)
allison.kierman@dlapiper.com
Airina L. Rodrigues (*pro hac vice*)
airina.rodrigues@dlapiper.com
DLA PIPER LLP (US)
2525 East Camelback Road,
Esplanade II, Suite 1000
Phoenix, AZ  85016-4232
Tel:  480.606.5100
Fax:  480.606.5101

Attorneys for Defendants
Hugo Boss

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| XY Skin Care & Cosmetics, LLC, an Arizona limited liability company, Micky A. Gutier, an individual, and Alberto Gutier III, an individual,<br><br>                    Plaintiffs,<br><br>          v.<br><br>Hugo Boss USA, Inc., a Delaware corporation, Hugo Boss Retail, Inc., a Delaware corporation, XYZ Corporation, ABC Corporation, and John and Jane Does,<br><br>                    Defendants.<br>-------------------------------------------------<br>Hugo Boss USA, Inc., a Delaware corporation, Hugo Boss Retail, Inc., a Delaware Corporation,<br><br>                    Counterclaimaints,<br><br>          v.<br><br>XY Skin Care & Cosmetics, L.L.C., an Arizona limited liability company, Micky A. Gutier, an individual, and Alberto Gutier III, an individual,<br><br>                    Counterdefendants. | **Case No. 2:08-cv-01467-ROS**<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM**<br><br>**Oral Argument Requested**<br><br>(The Honorable Roslyn O. Silver) |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES.............................................................................................. iii

MOTION ........................................................................................................................ vii

I.     MATERIAL UNDISPUTED FACTS ...................................................................... 1

II.    ARGUMENT .......................................................................................................... 1

     A.     Hugo Boss is Entitled to Summary Judgment.............................................. 1

     B.     Plaintiffs Admit they have No Rights in any Mark Containing "XX", and that the Mark Hugo XX or XHugoX Does Not Infringe....................... 1

     C.     Plaintiffs' Marks are Invalid and Plaintiffs have No Enforceable Rights in the Marks ................................................................................... 2

         1.     Plaintiffs Marks are Invalid Because Plaintiffs Have Not Used the Marks in Commerce............................................................. 2

             a.     Plaintiffs Must Demonstrate Use in Commerce and Priority of Use in Order to Prevail on Their Claims.............. 3

             b.     Plaintiffs' Initial Token and Isolated Transactions Were Not *Bona Fide* Use Necessary to Establish Priority ............................................................................. 4

             c.     None of Plaintiffs' Additional Activities Constitute "Use in Commerce" to Give Plaintiffs Priority of Trademark Rights.................................................................. 6

             d.     Plaintiffs Have Abandoned the Alleged Marks .................... 7

         2.     Plaintiffs' Alleged Marks are Invalid Because Plaintiffs Procured the Federal Registrations by Fraud................................... 8

         3.     Hugo Boss's *Bona Fide* offer of Goods Under the Hugo XY and Hugo XX Marks in 2007 is Sufficient to Establish Priority............................................................................................. 11

     D.     Plaintiffs Have Not Met Their Burden in Demonstrating Likelihood of Confusion Between Plaintiffs' and Defendants' Marks ........................ 11

         1.     The Alleged Marks are Weak Because they Are Generic or Merely Descriptive, and Lack Commercial Strength .................... 12

         2.     Defendants' and Plaintiffs' Goods are Unrelated ........................... 13

         3.     Compared as a Whole, the Marks are Not Similar ........................ 14

         4.     Plaintiffs Have Not Demonstrated Any Evidence of Actual Confusion and Have Admitted that No Actual Confusion Exists ............................................................................................. 15

|   |   | 5. | The Parties' Products Do Not Share Marketing Channels | 16 |
|---|---|---|---|---|
|   |   | 6. | Consumers Exercise a High Degree of Care in Selecting Defendants' Prestige Products | 16 |
|   |   | 7. | Plaintiffs Cannot Demonstrate that Hugo Boss Adopted its Trademarks in Bad Faith | 16 |
|   |   | 8. | Plaintiffs have no Plans to Expand Product Line or Distribution | 16 |
|   | E. | | Plaintiffs have Failed to State a Claim for Infringement of a State Service Mark Under A.R.S. § 44-1451 | 17 |
| III. | | | CONCLUSION | 17 |

EAST\42794814.4

# TABLE OF AUTHORITIES

*Abdul-Jabbar v. Gen. Motors Corp.*,
  85 F.3d 407 (9th Cir. 1996) ........................................................................................1

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ("*Sleekcraft*") ............................................... passim

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)......................................................................................................1

*Applied Info. Scis. Corp. v. eBay, Inc.*,
  511 F.3d 966 (9th Cir. 2007) ......................................................................................2

*Bellanca Aircraft Corp. v. Bellanca Aircraft Eng'g. Inc.*,
  190 USPQ 158 (TTAB 1976) ......................................................................................5

*Boston Duck Tours LP v. Super Duck Tours, LLC*
  531 F.3d 1 (1st Cir. 2008).........................................................................................15

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir. 1999) .............................................................. passim

*Burgess v. Gillman*,
  78 U.S.P.Q.2d 1773 (D. Nev. 2006) .........................................................................7

*Cal. Cooler, Inc. v.Loretto Winery, Ltd* ,
  774 F.2d 1451 (9th Cir. 1985) ....................................................................................3

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).......................................................................................................1

*Century 21 Real Estate, LLC v. Century Ins. Group*,
  2000 WL 484555 (D. Ariz. 2007).................................................................................1

*Chance v. Pac-Tel Teletrac Inc.*,
  242 F.3d 1151 (9th Cir. 2001) ("*Chance*") ................................................. passim

*Coca-Cola Co. v. Carlisle Bottling Works*,
  43 F.2d 101 (E.D. Ky. 1929) ....................................................................................15

*Columbia Pictures Inds., Inc. v. Miller*,
  211 USPQ 816 (TTAB 1981) ......................................................................................5

*Dep't of Parks and Recreation for the State of California v. Bazaar Del Mundo, Inc.*,
  448 F.3d 1118 (9th Cir. 2006) ....................................................................................3

*Entrepreneur Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002) ..................................................................................15

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*,
  198 F.3d 1143 (9th Cir. 1999) ..................................................................................13

- iii -

*Giorgio Beverly Hills, Inc. v. Revlon Consumer Prods. Corp.*,
    869 F. Supp. 176 (SDNY 1994)................................................................14, 18

*Glow Indust., Inc. v. Lopez*,
    252 F. Supp. 2d 962 (C.D. Cal. 2002) ......................................................12, 16

*GoTo.com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000) ...................................................................12

*Grupo Gigante SA De CV v. Dallo & Co., Inc.*,
    391 F.3d 1088 (9th Cir. 2004) ...................................................................5, 12

*Hanover Star Milling Co. v. Metcalf*,
    240 U.S. 403 (1916)...................................................................................2

*HMH Publ'g Co. v Brincat*,
    504 F.2d 713 (9th Cir. 1974) .....................................................................11

*HyCite Corp. v. Badbusinessbureau LLC*,
    418 F. Supp. 2d 1142 (D. Ariz. 2005) ......................................................12

*In re Bose Corp.*,
    580 F.3d 1240 (Fed. Cir. 2009).................................................................8

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
    4 F.3d 819 (9th Cir. 1993) .........................................................................12, 13

*Jaffe v. Simon & Schuster*,
    3 U.S.P.Q.2d 1047 (S.D.N.Y. 1987)...........................................................4, 5

*Jean Patou, Inc. v. Jacqueline Cochran, Inc.*,
    201 F. Supp. 861 (SDNY 1962)..................................................................4

*Keebler Co. v. Murray Bakery Prods.*,
    866 F.2d 1386 (Fed. Cir. 1989)..................................................................15

*KP Permanent Make-Up, Inc. v. Lasting Impression Inc.*,
    542 U.S. 111 (2004)...................................................................................2

*La Societe Anonyme des Parfums Galion v. Jean Patou., Inc*,
    495 F.2d 1265 (2d Cir. 1974)...........................................................passim

*Lindy Pen Co. v. Bic Pen Corp.*,
    725 F.2d 1240 (9th Cir. 1984) ...................................................................14

*Lucent Info. Mgmt., Inc. v. Lucent Tech., Inc.*,
    986 F. Supp. 253 (D. Del. 1997).................................................................5

*Medinol v. Neuro Vasx, Inc.*,
    67 USPQ2d 1205 (TTAB 2003) .................................................................8

EAST\42794814.4

*Miller v. Glenn Miller Prods.*,
   454 F.3d 975 (9th Cir. 2006) ................................................................2, 3

*Network Automation, Inc. v. Hewlett Packard Co.*,
   2009 WL 5908719 (C.D. Cal. 2009) ....................................................15

*Pacific Telesis v. Int'l Telesis Comms.*,
   994 F.2d 1364 (9th Cir. 1993) .............................................................16

*Paramount Pictures Corp. v. White*,
   31 USPQ2d 1768 (T.T.A.B. 1994) .........................................................4

*Park 'N Fly v. Dollar Park and Fly, Inc.*,
   469 U.S. 189 (1985)..............................................................................13

*PH4 Corp. v. Sun City Real Estate, LLC*,
   2008 U.S. Dist. LEXIS 100201 (D. Ariz. 2008)..................................17

*Quiksilver, Inc. v. Kymsta Corp.*,
   466 F.3d 749 (9th Cir. 2006) ..................................................................8

*Robi v. Five Platters, Inc.*,
   918 F.2d 1439 (9th Cir. 1990) ..........................................................9, 10

*Signature Guardian Sys., Inc. v. Lee*,
   209 USPQ 81 (TTAB 1980) ...................................................................5

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005) ...................................................... passim

*Tie Tech, Inc. v. Kinedyne Corp.*,
   296 F.3d 778 (9th Cir. 2002) ................................................................11

*Torres v. Cantine Torresella, S.r.l*,
   808 F.2d 46 (Fed. Cir. 1986)...............................................................8, 9

*Tuccillo v. Geisha NYC, LLC*,
   635 F. Supp, 2d 227 (EDNY 2009) ...................................................8, 10

*Warner Bros. Entm't v. Kaplan Trust*,
   Cancellation No. 92043813 (T.T.A.B. 2003) .........................................9

*Wal-mart Stores, Inc. v. Samara Bros., Inc.*,
   529 U.S. 205 (2000)..............................................................................12

*ZaZu Designs v. L'Oreal S.A.*,
   979 F.2d 499 (7th Cir. 1992) ..................................................................6

## STATUTES, REGULATIONS AND RULES

15 U.S.C. § 1064 ................................................................................................................13

15 U.S.C. § 1114 ...........................................................................................................1, 12

15 U.S.C. § 1119 ................................................................................................................13

15 U.S.C. § 1125 ...........................................................................................................1, 12

15 U.S.C. § 1127 ...........................................................................................................5, 7

A.R.S. § 44-1451 ...............................................................................................................17

A.R.S. § 44-1460 ...............................................................................................................17

## OTHER AUTHORITIES

*McCarthy on Trademarks and Unfair Competition*, § 16:7 (9th ed. 2010) ......................................4

*State Trademark and Unfair Competition Law, vol. 1 (Arizona)* Section H.12 ............................17

*Trademark Manual of Examining Procedure* , § 904 ....................................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MOTION

Pursuant to Federal Rule of Civil Procedure 56(b), Defendants Hugo Boss USA, Inc. and Hugo Boss Retail, Inc. (collectively, "Hugo Boss") hereby move for summary judgment on:

(1) all claims of Plaintiffs XY Skin Care & Cosmetics, L.L.C., Micky A. Gutier, and Alberto Gutier III (collectively, "Plaintiffs") as there is no genuine issue of material fact that Hugo Boss has infringed any of Plaintiffs' alleged trademarks or alleged trade name (the "Alleged Marks"); and

(2) all counterclaims of Hugo Boss, as there is no genuine issue of material fact that Plaintiffs lack rights in the asserted Alleged Marks because: (i) Plaintiffs have not made sufficient use of the marks to demonstrate a valid, protectable interest in the marks; (ii) have procured such marks by fraud; and (iii) such marks are generic or, in the alternative, merely descriptive and are thus not protectable trademarks. Based on documents provided to Defendants by Plaintiffs and based on Plaintiffs' own admissions, and the testimony of third parties, Plaintiffs' claims cannot withstand summary judgment. Summary judgment should be granted in favor of Hugo Boss.

This Motion is supported by the following Memorandum of Points and Authorities, supporting Statement of Facts filed concurrently herewith, and the entire record herein.

Dated: August 23, 2010

DLA PIPER LLP (US)


By  s/ Leon Medzhibovsky
Mark A. Nadeau
Leon Medzhibovsky
Allison L. Kierman
Airina L. Rodrigues
Attorneys for Defendants

**MEMORANDUM OF LAW**

## I.    MATERIAL UNDISPUTED FACTS

A Statement of Undisputed Material Facts ("SOF") is filed concurrently with this

Motion and Memorandum of Law, and is referred to and cited herein.

## II.    ARGUMENT

### A.    Hugo Boss is Entitled to Summary Judgment

Summary judgment shall be granted if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v.*

*Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986); *Surfvivor Media, Inc. v. Survivor Prods.*,

406 F.3d 625, 630 (9th Cir. 2005). Moreover, likelihood of confusion may be decided as

a matter of law. *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 413 (9th Cir. 1996);

*accord Century 21 Real Estate LLC v. Century Ins. Group*, 2007 WL 484555 at *6 (D.

Ariz. 2007).  As set forth herein, Hugo Boss has established that no genuine issue of

material fact exists with respect to any claims or counterclaims.

### B.    Plaintiffs Admit they have no Rights in any Mark Containing "XX", and that the Mark Hugo XX or XHugoX Does Not Infringe

First, Plaintiffs' claims that Hugo Boss's use of "Hugo XX" and "XHugoX"

infringe the Alleged Marks fail, as there is no genuine issue of material fact that Plaintiffs

do have an interest in *any* mark that contains or is composed of the letters or term "XX."

(SOF ¶ 9.) Moreover, Plaintiffs have testified that they do not believe the "HugoXX" and

"XHugoX" marks infringe the Alleged Marks. *Id.* Thus, Plaintiffs lack standing under the

Lanham Act to assert any claims whatsoever based on Hugo Boss's use of "HugoXX"

and "XHugoX." 15 U.S.C. §§ 1114(b), 1125(a).

In the Ninth Circuit, to prove trademark infringement, the plaintiffs bear the

burden of showing (1) ownership of a valid mark and (2) likelihood of confusion.

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp*., 174 F.3d 1036, 1046-47 (9th Cir.

1999) (in determining whether use of mark constitutes trademark infringement, the court

must first determine whether a valid, protectable trademark interest exists in the mark). Since Plaintiffs have admitted they have no rights to any mark containing "XX", the Mark "Hugo XX" cannot possibly infringe on Plaintiffs' Alleged Marks. (SOF ¶ 9.) Nevertheless, assuming *arguendo* that Plaintiffs have standing to assert a claim against Hugo Boss for its use of "Hugo XX," such claim must fail for at least all of the reasons set forth below.

### C. Plaintiffs' Marks are Invalid and Plaintiffs have No Enforceable Rights in the Marks

A successful trademark infringement claim under the Lanham Act first requires a plaintiff to prove ownership or an interest in a protectable mark, and also to prove that the alleged infringer's mark is similar enough to cause confusion, cause mistake, or to deceive. *KP Permanent Make-Up, Inc. v. Lasting Impression Inc.*, 543 U.S. 111, 117 (2004); *Brookfield*, 174 F.3d at 1046-47.

The undisputed material facts demonstrate that Plaintiffs' Alleged Marks are invalid because Plaintiffs (1) have not made *bona fide* use of the Alleged Marks in commerce; (2) if Plaintiffs ever made *bona fide* use of the Alleged Marks, such use did not commence until 2009, approximately two years <u>after</u> Hugo Boss first used its Hugo XX and Hugo XY trademarks; and (3) Plaintiffs abandoned the Alleged Marks. Furthermore, Plaintiffs' federal trademark registrations are invalid because they were procured by fraud. Finally, the Alleged Marks are not entitled to protection because they are generic or, in the alternative, merely descriptive. As a result, Plaintiffs cannot prove ownership of a valid mark or prove priority of use sufficient to succeed on their claims of trademark infringement under the Lanham Act or at common law.

### 1. Plaintiffs Marks are Invalid Because Plaintiffs Have Not Used the Marks in Commerce

To establish ownership of a trademark, a plaintiff must show a "valid, protectable interest" in a trademark. *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 972 (9th Cir. 2007). As the Supreme Court has declared, "[trademark] right[s] grow … out of use, not mere adoption." *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 414 (1916). *See also Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 979 (9th Cir. 2006) ("Registration

- 2 -

1  does not create a mark or confer ownership; only use in the marketplace can establish a

2  mark.") (citing *Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1454 (9th Cir.

3  1985)).

### a. Plaintiffs' Must Demonstrate Use in Commerce and Priority of Use to Prevail on Their Claims

4

5          To demonstrate priority of use, a party must prove that (1) it actually adopted and

6  used the relevant mark in commerce prior to another party's use or registration in a

7  manner that sufficiently associated the marks with the goods or services; and (2) its use

8  of the marks was continuous and not interrupted.  *Dep't of Parks and Recreation for the*

9  *State of California v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118 (9th Cir. 2006).  The Ninth

10 Circuit has held that first use in commerce means "a bona fide sale or transportation in

11 commerce . . . This requirement breaks down into two distinct elements: (1) Was the

12 transaction upon which the registration application was founded *bona fide*; and (2) if it

13 was *bona fide*, was it followed by activities proving a continuous effort or intent to use

14 the mark." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1157 (9th Cir. 2001)

15 ("*Chance*").  Additionally, "the 'use in commerce' requirement includes (1) an element of

16 actual use, and (2) an element of display." *Id.* at 1159.

17         The Ninth Circuit adheres to a "totality of the circumstances test" in order to

18 determine when and if a trademark was used in commerce.  *Chance*, 242 F.3d at 1159.

19 The totality of the plaintiff's acts must show use of a mark in a manner that is

20 "*sufficiently public* to identify or distinguish the marked goods in an appropriate segment

21 of the public mind." *Id.* (emphasis added)(the mailing of 35,000 post cards was

22 insufficient to establish first use because, under the totality of the circumstances, the only

23 two sales made were token sales and no genuine effort was made to exploit the mark

24 thereafter).  The District Court should also consider the genuineness and commercial

25 character of the activity, the scope of the non-sales activity relative to what would be a

26 commercially reasonable attempt to market the service, the degree of ongoing activity of

27 the holder to conduct the business using the mark, the amount of business transacted and

28 other "similar factors." *Chance*, 242 F.3d at 1159.

- 3 -

Mere preparatory use is insufficient to establish use. *Brookfield*, 174 F.3d at 1052 (use of a mark in reserving a domain name and in preparatory email correspondence with customers and lawyers is insufficient to establish use). Nor are sales to friends and family. "Nominal or token sales to relatives and personal friends do not constitute a bona fide commercial use of a trademark." *McCarthy on Trademarks and Unfair Competition* § 16:7 (9th ed., 2010), *citing Jaffe v. Simon & Schuster*, 3 USPQ2d 1047, 1049 (SDNY 1987)(nominal sales of board games to friends and relatives of inventor are not bona fide commercial transactions that would establish priority of use); *see also Chance*, 242 F.3d at 1155, 1160.

Finally, even ongoing but minimal sales are not enough to establish or maintain trademark rights. One Second Circuit decision is particularly instructive because of its parallel facts. In *La Societe Anonyme des Parfums le Galion v. Jean Patou Inc.*, plaintiff, a French perfume maker, had sold its SNOB perfume for many years outside of the United States. But plaintiff was unable to make U.S. sales because defendant held a U.S. registration for SNOB for perfume. While defendant made *bona fide* sales to arm's length parties, the issue was whether the volume of sales was sufficient to establish superior trademark rights. Over a twenty-nine year period, defendant had sold only eighty-nine bottles of SNOB perfume, generating gross sales of less than $600 and profits of approximately $100. The Second Circuit held that these sales were not the "kind of bona fide use intended to afford a basis for trademark protection." 495 F.2d 1265, 1272 (2d Cir. 1974).

### b. Plaintiffs' Initial Token and Isolated Transactions Were Not *Bona Fide* Use Necessary to Establish Priority

Plaintiffs must prove that its first use of the Alleged Marks was *bona fide* and made in the ordinary course of trade. *Chance*, at 1156. Token use does not satisfy this standard.[1] To establish *bona fide* trademark use, Plaintiffs must show (1) that Plaintiffs'

---

[1] Prior to 1989, token use could sometimes be used to support an application for registration (in contrast to an infringement claim). However, 1989 amendments to the Lanham Act now impose the higher standard of *bona fide* commercial use, even for registration purposes. 15 U.S.C. § 1127; *Paramount Pictures Corp. v. White*, 31 USPQ2d 1768, 1776 (TTAB 1994)(Congress adopted the stricter standard to eliminate the "commercial sham of 'token use'").

initial transaction under the mark was a *bona fide commercial* transaction, *and* (2) the initial transaction was accompanied by activities indicating a *continuing* effort by Plaintiffs to sell their products on a *commercial scale*. *Id.* at 1158; *Columbia Pictures Inds., Inc. v. Miller*, 211 USPQ 816, 819 (TTAB 1981)(single sale of product was not *bona fide* commercial transaction, nor was it followed by affirmative measures to create commercially viable business); *Bellanca Aircraft Corp. v. Bellanca Aircraft Eng'g., Inc.*, 190 USPQ 158, 167 (TTAB 1976)(two sales not followed by other commercial use are insufficient). Moreover, Courts draw a distinction between the minimal proof of use that may suffice for registration purposes in the absence of a dispute over priority of use and the higher standard of proof required to prevail in a priority dispute between two parties, such as in this case. *See, e.g., Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 986 F. Supp. 253, 259 (D. Del. 1997); *Signature Guardian Sys., Inc. v. Lee*, 209 USPQ 81, 87 (TTAB 1980)(evidence failed to show that shipment to a friend was *bona fide* use; in priority dispute, greater scrutiny is given to initial use claims). [2]

Finally, as discussed above, sales to friends and family do not constitute *bona fide commercial* transactions and do not create valid and enforceable trademark rights. *Chance* at 1160; *Jaffe*, at 1049 (five sales to two friends not *bona fide* commercial use); *Signature Guardian Systems, Inc. v.* Lee, 209 USPQ 81, 87 (TTAB 1980); *ZaZu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992) ("[a] few bottles sold over the counter .. and a few more mailed to friends … neither link the ZaZu mark with [plaintiff's] product in the minds of consumers nor put other producers on notice.").

Plaintiffs cannot show that Micky Gutier's isolated sales to Jeffrie Allan and Jed McNair were *bona fide* commercial transactions that would establish trademark rights. First, Micky Gutier admits and third parties have testified that these initial sales were made for the purpose of procuring federal trademark registrations. (SOF ¶¶ 80-81, 107-08.) Thus, far from being a *bona fide* commercial transaction, this is precisely the kind of

---

[2]     Decisions of the Trademark Trial and Appeal Board ("TTAB") are relevant because the Ninth Circuit has held that the TTAB is an authority "whose expertise we respect and whose decisions create expectations." *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1095 (9th Cir. 2004).

- 5 -

token, or sham, transaction that the 1989 Lanham Act amendments sought to terminate. Second, Messrs. Allan and McNair admittedly were and are Mr. Gutier's close friends. (SOF ¶ 18.) These initial sales therefore do not constitute *bona fide* commercial use sufficient to establish rights in the Alleged Marks. *See supra,* at 4. Importantly, the initial transactions were not accompanied by activities indicating a *continuing* effort by Plaintiffs to sell their products on a *commercial scale*. *See Chance* at 1157. In fact, Plaintiffs did not and cannot document another sale or even purchase of product inventory for another *four years*. *See id.* at 1160 (finding no genuine continuous exploitation of a mark where party waited approximately 18 months to order inventory) (SOF ¶ 23.) To the extent Plaintiffs recommenced some minimal degree of commercial activity in 2009, such activity corresponded with and was clearly motivated by the initiation of this litigation.[3] This is exactly the type of "defensive use" (use to reserve rights in a mark), that courts disapprove of, and is insufficient to establish rights in the Alleged Marks, let alone priority of right. *See La Societe Anonyme*, 495 F.2d at 1274.

The fact that none of Plaintiffs' activities constitute an effort to sell products on a commercial scale is bolstered by Plaintiffs' own admissions that the business has not gotten off the ground, and they have not – even in 2010 – formally launched the products, the company, or an operative website. (SOF ¶¶ 37-38, 44-45.)

### c. None of Plaintiffs' Additional Activities Constitute "Use in Commerce" to give Plaintiffs Priority in the Marks

Assessing all of the circumstances, Plaintiffs have not used the Alleged Marks in commerce in a manner that would give rise to valid, protectable rights. Specifically, plaintiffs have not advertised or otherwise used the Alleged Marks in a manner that is "sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind." *See Chance* at 1158; SOF, ¶¶ 31-32, 46. Plaintiffs' so-called "advertisement" has been limited to "word-of-mouth" activities – namely, telling friends

---

[3] Defendants assume Plaintiffs recommenced commercial activity to show use of the Alleged Marks or some measure of damages to make this litigation seem less frivolous. From inception, Plaintiffs' case has been built on misrepresentations. Exhibit A compares Plaintiffs' exaggerated claims and misrepresentations against undisputed admissions, demonstrating that Plaintiffs have concocted "facts" to substantiate this meritless case.

and family about the products and XY Skin Care & Cosmetics. (SOF, ¶ 31.) Such use is not sufficient, as it does not serve to distinguish the Alleged Marks in the *public* mind.[4] As a result, Plaintiffs have no goodwill in the Alleged Marks. (SOF, ¶¶ 46, 70, 157.) Moreover, Plaintiffs' website does not and has never displayed or described the products, is not and had never been interactive, and even lacks basic contact information to enable a potential customer to inquire about or order products. (SOF, ¶¶ 35-38.) Plaintiffs have sold, on average, one product (a single item) per year, and nothing between 2004 and 2009.[5] All such sales were made to or through friends. (SOF, ¶¶ 18,-19, 23.) After the initial sham transactions to Messrs. Allan and McNair, all remaining sales were made following commencement of this action, likely in efforts to concoct "commercial activity" to lend a veneer of legitimacy to this litigation. Such minimal and sham transactions are not enough to give Plaintiffs rights in the Alleged Marks. (*Id.* at ¶ 23.)

### d.    Plaintiffs Have Abandoned the Alleged Marks

Even assuming *arguendo* that Plaintiffs' initial sales to Messrs. Allan and McNair were sufficient to establish rights in the Alleged Marks, Plaintiffs abandoned the mark by engaging in more than three years of consecutive non-use of the Alleged Marks. (SOF, ¶ 21-23.) Three years of consecutive non-use is prima facie evidence of abandonment. 15 U.S.C. § 1127. While the presumption of abandonment may be rebutted by showing actual use or intent to resume use in the reasonably foreseeable future, such use must be "the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." *Burgess v. Gillman*, 78 USPQ2d 1773, 1777 (D. Nev. 2006)(citations omitted)(in assessing abandonment, token use or use to reserve rights in a mark is not *bona fide* use). Here, Plaintiffs cannot rebut the presumption of abandonment because, whatever minimal resumption of use they may have made in 2009, such use was both token, in that it was of such a *de minimus* nature as to not be *bona fide*,

---

[4]    Compare the present case to *Chance*, where mailing of some 35,000 post cards to the public-at-large was not held to be *bona fide* use of a trademark to establish priority. Here, there has been no public use of the Alleged Marks at all.
[5]    Compare the present case to *La Societe Anonyme*, where over three units of product were sold per year. That Court held such sales were insufficient to maintain trademark rights.

and "defensive" in that it was made merely to reserve rights in the Alleged Marks or lend credence to this litigation. *See id.*; *La Societe Anonyme*, 495 F.2d at 1274.

**2. Plaintiffs' Alleged Marks are Invalid Because Plaintiffs Procured the Federal Registrations by Fraud**

Plaintiffs' federal registrations for the Alleged Marks are likewise invalid for the additional reason that Plaintiffs have procured both the registration and renewal of the Alleged Marks fraudulently. Fraud in procuring a trademark registration may be raised as a ground for cancellation in civil litigation. Fraud "occurs when an applicant knowingly makes false, material representations of fact in connection with an application." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006)(citations omitted); *Torres v. Cantine Torresella, S.r.l*, 808 F.2d 46, 48 (Fed. Cir. 1986); *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). In determining whether a trademark registration is obtained fraudulently, the appropriate inquiry is not necessarily into the registrant's subjective intent, but rather into the objective manifestations of that intent. *Bose*, at 1244; *citing Medinol v. Neuro Vasx, Inc.*, 67 USPQ2d 1205, 1209 (TTAB 2003). This means that "intent must often be inferred from the circumstances and related statement[s] made." *Id.*; *citing Medinol* at 1209.

Courts have held that misrepresentation of a date of first use in a Statement of Use submitted to the USPTO is sufficient to establish fraud. *Tuccillo v. Geisha NYC, LLC*, 635 F. Supp. 2d 227, 242 (EDNY 2009)(preliminary injunction granted because defendant was likely to prove that plaintiff committed fraud on the USPTO based on false statements alleging an incorrect date of first use in a Statement of Use). Here, the "knowledge" element of the fraud claim was met because plaintiff was "aware that the statement that he was operating the restaurant and lounge as of April 1, 2009 [*sic*] was false." *Id.* at 243. The "materiality" element was also met because the misrepresentation occurred in the context of the Statement of Use, where the "statement regarding actual use is the entire purpose of the application to the USPTO." *Id.*

Similarly, submitting a false specimen of use is grounds for finding fraud. *Torres*, 808 F.2d at 49 ("If a registrant … stat[es] that his registered mark is currently in use …

- 8 -

and that the label attached to the application shows the mark as currently used when, in fact, he knows … he is not using the mark as registered and that the label attached to the registration is not currently in use, he has knowingly attempted to mislead the PTO."); *see also Warner Bros. Entm't, Inc. v. The Kaplan Trust*, Cancellation No. 92043813 (TTAB 2007)(not precedential)(submitting a fabricated specimen of use is fraud necessitating cancellation of the registration).

Finally, fraud can be committed in the filing of maintenance or renewal documents, such as Section 8 affidavits of continuing use and Section 15 affidavits of incontestability. *Torres*, 808 F.2d at 48 (citations omitted)(finding fraud in submission of a Section 8 affidavit). Filing misrepresentations in renewal applications is grounds for cancellation of an original registration. *Id; Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990)(fraudulent misstatements in incontestability affidavits "jeopardize not only the incontestability claim, but also the underlying registration").

Here, the undisputed facts show that Plaintiffs' actions amounted to fraud on the PTO, necessitating cancellation of the Alleged Marks. Micky Gutier's statements to the PTO regarding the scope of use of the Alleged Marks were knowingly false and material and Mr. Gutier intended the PTO to rely upon those statements. Mr. Gutier knowingly misrepresented the date of first use in the Statements of Use filed for each of the Alleged Marks. (SOF ¶¶ 73-81, 93-108.) His testimony and the testimony of third parties establishes that his initial, token, sales to Messrs. Allan and McNair were made for the purpose of obtaining the registrations. (SOF ¶¶ 80-81, 107-08.) Further, Mr. Gutier knew that he was not using the marks in commerce on the dates alleged in the Statements of Use, but was clever enough to know that he had to use the Alleged Marks in interstate commerce by shipping products across state lines. (*Id*.) So, Mr. Gutier contacted his friends and induced them to enter into sham transactions, which he documented (presumably in the event that the USPTO asked for documentation), for the purpose of and upon which he based his fraudulent and misleading Statements of Use. (*Id*.) The USPTO relied on these false Statements of Use in registering the Alleged Marks. Then,

*Mr. Gutier did not make another sale for approximately five years.* (SOF ¶¶ 21-23.)

Compounding matters is the fact that Mr. Gutier did not merely falsely state dates of first use. Mr. Gutier also fabricated a bogus specimen of use for submission to the USPTO in connection with prosecution of the XY Skin Care mark. (SOF ¶¶ 110-13.)[6] The record (and photographic evidence) reveals that Mr. Gutier photoshopped a computer-generated logo onto a photograph of a blank product. It was this specimen, not a specimen of the mark as actually used in commerce, that was submitted to the USPTO and accepted. (SOF ¶¶ 110-12.) The misrepresentation is material, as the USPTO undoubtedly would have rejected a photograph of a blank product as unacceptable. *See Trademark Manual of Examining Procedure* § 904 ("Specimens are required because they show the manner in which the mark is seen by the public.").

Finally, even after being made aware of the issue of fraud and the gravity of making misrepresentations to the USPTO during a deposition on January 5, 2010, Mr. Gutier nonetheless, *in that same month*, made further false statements in connection with the Section 8 and 15 affidavits for each of the Alleged Marks. (SOF ¶¶ 84-92, 115-23.) Mr. Gutier falsely stated that the Alleged Marks have been in continuous use for all of the goods listed in the registration since the registrations were granted and, even more incredulously, that "there is no proceeding involving said rights pending and not disposed of either in the U.S. Patent and Trademark Office or *in the courts.*" (SOF ¶¶ 86-91, 117-22.) Mr. Gutier is unquestionably aware based on Hugo Boss's Amended Answer and Counterclaims and discovery requests that the present action involves claims challenging his rights in and the validity of the Alleged Marks. (SOF ¶¶ 90, 121.) These false statements are sufficient to warrant cancellation of the entire registrations for the Alleged Marks. *Robi*, 918 F.2d at 1444. More telling is that these statements are only the latest in a disturbing pattern of blatant and habitual fraudulent conduct over the better part of a decade. Mr. Gutier has demonstrated that he will lie, fabricate "arm's length" sales and even forge specimens to obtain and maintain his registrations. Such conduct is

---

[6] Here, Plaintiff misstated the date of first use *twice* (and inconsistently) – once with the initial application, and once with the Declaration of Use. (SOF ¶¶ 94-104.)

inequitable, and revealing of Plaintiffs' unclean hands prior to and during this litigation.[7]
These registrations must now be cancelled.

### 3. Hugo Boss's *Bona Fide* offer of Goods Under the Hugo XY and Hugo XX Marks in 2007 is Sufficient to Establish Priority

For all of the reasons demonstrated above, Plaintiffs lack valid, protectable rights in the Alleged Marks and registrations to the Alleged Marks. Even if this Court finds Plaintiffs ever validly used the Alleged Marks, such use did not commence until late in 2009, almost two years after Hugo Boss had commenced using "Hugo XY" and "Hugo XX" in commerce. "Priority for purposes of trademark law is established by commercial usage ... it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 980-81 (C.D. Cal. 2002) (citations omitted). There is no factual dispute that Hugo Boss made a full-scale launch of the Hugo XY and Hugo XX fragrance line in September 2007, while Plaintiffs only commenced meager use of the Alleged Marks nearly two years later, in 2009.[8] Therefore, Hugo Boss has priority in the marks. (SOF ¶¶ 22, 47.)

### D. Plaintiffs Have Not Met Their Burden in Demonstrating Likelihood of Confusion Between Plaintiffs' and Defendants' Marks

While an assessment of likelihood of confusion is unnecessary in the present case because the Alleged Marks are invalid, Plaintiffs still cannot demonstrate a likelihood of confusion and, consequently, cannot prove infringement. Plaintiffs bear the burden of proving infringement by a preponderance of evidence. *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002); *see also Surfvivor*, 406 F.3d at 630. The test for likelihood of confusion requires a determination of whether a "reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Id*. Likelihood of confusion calls for a probability of confusion rather than simply a possibility. *HMH Publ'g Co. v Brincat*, 504 F.2d 713, 717

---

[7] Such conduct has been detailed in Hugo Boss's submissions to the Court regarding Plaintiffs' discovery conduct.

[8] Plaintiffs did not even purchase more than a few dollars' worth of inventory until July 2008. (SOF ¶¶ 24-29.) Nonetheless, purchase of product from a distributor is not valid use in commerce, as there is no "element of display." *See Chance*, *supra* at 1159.

(9th Cir. 1974). The analysis for infringement under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a)(1) is identical. *Brookfield*, 174 F.3d at 1046-47 n.8. Similarly, common law unfair competition claims hinge on a finding of likely confusion. *See HyCite Corp. v. Badbusinessbureau, LLC*, 418 F. Supp. 2d 1142, 1153 (D. Ariz. 2005).

To analyze likelihood of confusion, Courts in the Ninth Circuit consider eight factors, generally referred to as the *Sleekcraft Factors*:  (1) strength of the mark(s); (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) degree of consumer care; (7) defendants' intent; and (8) likelihood of expansion. *Surfvivor*, 406 F.3d at 631, *citing AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) ("*Sleekcraft*"). Hugo Boss also notes that the USPTO has found no likelihood of confusion between the Alleged Marks and the "Hugo XY" mark, and requests that this Court take judicial notice of that finding. (SOF ¶ 69.)

### 1. The Alleged Marks are Weak Because they Are Generic or Merely Descriptive, and Lack Commercial Strength

The Ninth Circuit has held that strength of a mark is evaluated in terms of its conceptual and commercial strength.  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). Trademarks that lack distinctiveness are "weak", and receive little or no protection from infringing uses.  Generic marks are entitled to no protection, and merely descriptive trademarks are not entitled to protection unless the mark has acquired secondary meaning. *Grupo Gigante SA De CV v. Dallo & Co, Inc.*, 391 F.3d 1088, 1095 (9th Cir. 2004)(" [A] mark has secondary meaning 'when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself.'" (*quoting Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000)). "While evidence of a manufacturer's sales, advertising and promotional activities may be relevant in determining secondary meaning, the true test of secondary meaning is the *effectiveness* of this effort to create it." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993)(emphasis added).

Conceptually, the Alleged Marks are so weak that they do not warrant protection. "XY" is the chromosomal designation for males and, in common parlance, simply means

- 12 -

"man", "men", or "for men." (SOF ¶¶ 61-65.) For that reason, Hugo Boss disclaimed the letters "XY" from its application for "Hugo XY", currently approved for publication before the USPTO. (SOF ¶ 67.) A trademark is generic if the term answers the question "what is the product being sold?" *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999)**.** Here, the terms "XY Skin Care" and "XY Cosmetics" answer the question that the products sold are simply skin care or cosmetics products for men.  (SOF ¶ 65.)[9]

At best, the Alleged Marks are merely descriptive of the products, meaning that they identify or describe some aspect, characteristic, or quality of the products to which they are affixed in a straightforward way that requires no exercise of the imagination to be understood. It requires no imaginative or cognitive leap to associate the term "XY" with "men" or "for men." (*Id.*) To the extent the Alleged Marks may be merely descriptive, Plaintiffs have offered no evidence suggesting they have acquired secondary meaning. Rather, given Plaintiffs' *de minimus* use of the Alleged Marks and complete lack of advertising, a strong inference of no secondary meaning can be drawn. Plaintiffs simply have not undertaken activities that would create secondary meaning, let alone demonstrated that any such hypothetical activities would do so. *International Jensen*, 4 F.3d at 824-25.[10] Turning to the second prong in assessing the strength of the Alleged Marks, Hugo Boss has demonstrated in detail that the commercial strength of the Alleged Marks is absolutely nil. (SOF ¶¶ 10-46, 70, 157.)

### 2.    Defendants' and Plaintiffs' Goods are Unrelated

The standard for deciding whether the parties' goods or services are "related" is whether customers are "likely to associate" the two product lines or reasonably conclude that the products came from the same source. *Surfvivor*, 406 F.3d at 633. Here, the parties' goods are unrelated because Hugo Boss's products are fragrances or fragrance-

---

[9]    If the Court determines the Alleged Marks are generic, it must declare them invalid and order them cancelled. 15 U.S.C. §§ 1119, 1064; *Park 'N Fly Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985).
[10]    The extreme weakness of the Alleged Marks is another factor supporting a conclusion that the marks are invalid and cannot form the basis of an infringement claim.

- 13 -

derived products, each sharing a common scent. (SOF ¶ 48.) Hugo Boss does not offer a targeted skin care line or cosmetics for men or women under the accused marks. (SOF ¶ 49.) In contrast, Plaintiffs' products are admittedly not fragrances or fragrance-derived products, but are eyeliners and a facial scrub. (SOF ¶ 13-17.)

### 3. Compared as a Whole, the Marks are Not Similar

Similarity of marks is "tested on three levels: sight, sound, and meaning." *Sleekcraft,* 599 F.2d at 351. In judging similarity, trademarks should be considered as they are encountered in the marketplace, taking into account the normal circumstances surrounding purchase of the type of goods they represent. *Id*; *see also Lindy Pen Co., Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984) (finding no likelihood of confusion because, taken as a whole, packaging, display and promotional materials were dissimilar in appearance). Furthermore, use of a house mark in conjunction with a trademark minimizes the likelihood consumers will be confused. *Id.*; *Giorgio Beverly Hills, Inc. v. Revlon Consumer Prods. Corp.*, 869 F. Supp. 176, 185 (SDNY 1994).

Judging all factors, the marks "Hugo XY" and "Hugo XX" are not similar to the Alleged Marks. First, besides the common element "XY" (shown above to be weak and thus entitled to little or no protection), the marks share no other common elements.[11] Second, as compared in their entirety and encountered in the marketplace, the parties' respective marks are not displayed similarly and do not share common packaging features. (SOF ¶¶ 14-15, 54-56, 70.) Third, Hugo Boss's marks' most prominent feature is the house mark "Hugo", a strong and famous trademark that is well known to consumers. Presence of the "Hugo" element means that consumers are unlikely to associate Hugo Boss's products with any source other than Hugo Boss. (SOF ¶ 70.) Furthermore, although Hugo Boss's marks are "design marks" (incorporating creative or design elements), when referenced or used verbally in commerce as words standing alone, the "Hugo" portion of the mark most commonly appears before the "XY" or "XX" portion of the mark. (SOF ¶ 58.) Even though marks are compared in their entirety, the

---

[11] A portion of a mark is "weak" if it is generic, descriptive, highly suggestive, or in common use by many other sellers in the marketplace. (*See* SOF ¶¶ 59-70.)

first word, prefix or syllable in a mark is usually considered the dominant portion of the mark. *Coca-Cola Co. v. Carlisle Bottling Works*, 43 F.2d 101, 113 (E.D. Ky. 1929), *aff'd* 43 F.2d 119 (6th Cir. 1930), *cert. denied* 282 U.S. 882 (1930). Further, the well-known or famous part of a composite mark will similarly be treated as the dominant portion of a mark and given greater weight. *Network Automation, Inc. v. Hewlett Packard Co.*, 2009 WL 5908719, *8 (C.D. Cal. 2009). Since "Hugo" is the dominant portion of the composite mark "Hugo XY" both in placement and in commercial strength, likelihood of confusion is minimized – after all, "Hugo" is the *uncommon* element of the parties' respective marks. *See id.* And, to the extent the common element "XY" is weak, likelihood of confusion is further reduced. *See Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386, 1390 (Fed. Cir. 1989) (less weight given to the descriptive term "pecan" in finding no likely confusion between "Pecan Sandies" cookies vs. "Pecan Shorties" cookies).

### 4. Plaintiffs Have Not Demonstrated Any Evidence of Actual Confusion and Have Admitted that No Actual Confusion Exists

While evidence of actual confusion is considered persuasive in trademark cases, *see, e.g., Surfvivor*, 406 F.3d at 633, "*de minimis* evidence of actual confusion is unpersuasive." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1150 (9th Cir. 2002). Furthermore, confusion resulting from elements of the mark that are merely *generic* is not the result of any protectable interest; and will be considered irrelevant. *Boston Duck Tours LP v. Super Duck Tours, LLC*, 531 F.3d 1, 25 (1st Cir. 2008). Here, Plaintiffs have not produced any evidence of actual confusion. The very few friends and family of Micky Gutier who were exposed to the Alleged Marks and Hugo Boss's marks were far from confused – they had no questions about the source, sponsorship or origin of Plaintiffs' and Hugo Boss's respective products.[12] (SOF ¶¶ 133-34.) Further, Plaintiffs failed to produce additional evidence of confusion, such as a survey, that might support their unsubstantiated allegations of confusion.[13] (SOF ¶ 132.) Finally, because Plaintiffs

---

[12] At best, such witnesses had only the layperson's legal question as to why Hugo Boss and Plaintiffs could both use the term "XY" in a trademark. (SOF ¶¶ 133-34.)

[13] Plaintiffs neither produced expert reports nor rebutted Hugo Boss's expert reports.

have not made *bona fide* use of the Alleged Marks, consumer confusion is impossible. In order to be confused, consumers would have to be exposed to both marks. (SOF ¶ 46.)

### 5. The Parties' Products Do Not Share Marketing Channels

*See* SOF ¶ 53.

### 6. Consumers Exercise a High Degree of Care in Selecting Defendants' Prestige Products

Sophisticated consumers are unlikely to be confused as to the source or origin of a product. *See Sleekcraft*, at 353. Courts have recognized that purchasers of fragrance and skin care products tend to exercise a high degree of care and brand consciousness. *Glow Ind., Inc. v. Lopez*, 252 F. Supp. 2d 962, 1001-02 (C.D. Cal. 2002). Accordingly, consumers of the parties' respective products are likely to exercise a high degree of care when purchasing such products, and are unlikely to be confused in the circumstances of this case. (*See also* SOF ¶ 70.)

### 7. Plaintiffs Cannot Demonstrate that Hugo Boss Adopted its Trademarks in Bad Faith

There is no evidence demonstrating that Hugo Boss adopted its "Hugo XX" and "Hugo XY" marks in bad faith. Any inference of deliberate copying or bad faith is unwarranted, given that the terms "XY" and "XX" are frequently used by third party producers of body and personal care products to indicate that such products are intended for men or women. (SOF ¶ 63.) Moreover, Hugo Boss could not have adopted the letters "XX" and "XY" with the intent of deriving a benefit from the Alleged Marks' reputation. *See, e.g., Pacific Telesis v. Int'l Telesis Comms.*, 994 F.2d 1364, 1369 (9th Cir. 1993). First, as shown, "XX" and "XY" are weak designations and are not protectable trademarks. Second, Plaintiffs have no goodwill whatsoever in the marks – the notion that Hugo Boss would want to – or even could – derive a benefit from use of the Alleged Marks is ludicrous. (SOF ¶ 157.)

### 8. Plaintiffs have no Plans to Expand Product Line or Distribution

Expressing interest in expansion without adducing concrete evidence of expansion plans will not support a finding that the existence of an allegedly infringing mark is hindering expansion plans. "Mere speculation is not evidence." *Surfvivor*, 406 F.3d at

- 16 -

634. Plaintiffs have admitted they presently have no business plan or plans for expansion. (SOF ¶¶ 42-43.) No documents or testimony suggests they have ever considered marketing fragrances or fragrance-derived products. Nor have they ever approached department stores or standard retail channels to discuss distribution of their products. (SOF ¶ 43.)

### E.    Plaintiffs have Failed to State a Claim for Infringement of a State Service Mark Under A.R.S. § 44-1451

To have standing to bring a claim under A.R.S. 44-1451, Plaintiffs must prove they own an Arizona registered service mark. *See PH4 Corp. v. Sun City Real Estate, LLC*, 2008 U.S. Dist. LEXIS 100201, *4-5 (D. Ariz. 2008). Plaintiffs have offered no evidence demonstrating they own a service mark under § 44-1451, as they have alleged. (SOF ¶¶ 6; First Amended Cplt. at ¶¶ XLVII.) Since nothing in the record shows Plaintiffs have rights to an Arizona registered service mark, Plaintiffs have no actionable claim under § 44-1451.

If in the alternative this Court finds that Plaintiffs have sufficiently alleged infringement of the registered Arizona trade name "XY Skin Care & Cosmetics" under A.R.S. § 44-1460 (even though Plaintiffs never pled a cause of action under this statute), Plaintiffs have no actionable claim. Under § 44-1460.05(A), the registration of a trade name gives the holder of the registered trade name exclusive rights to use of the name. Although case law treatment of § 44-1460 is scant, there is support for the position that such exclusive right applies *only* to the conflict between trade names and corporate names under the Arizona Statute and only if there is actual use to support the trade name registration. *State Trademark and Unfair Comp. Law, v. 1 (Arizona)* § H.12. Plaintiffs have not made actual use of their trade name to support a claim under § 44-1460, and Hugo Boss does not use a similar corporate or trade name. (SOF ¶¶ 1-2, 10-46.)

## III.    CONCLUSION

For the foregoing reasons and based on the entire record herein, Hugo Boss requests the Complaint and Amended Complaint brought against Hugo Boss be summarily dismissed and that Plaintiffs be denied all relief on the claims set forth therein.

- 17 -

Dated:  August 23, 2010          DLA PIPER LLP (US)

By  s/Leon Medzhibovsky
_____
Mark A. Nadeau
Leon Medzhibovsky
Allison L. Kierman
Airina L. Rodrigues

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Thomas P. McGovern
McGovern Law Offices
4518 North 32nd Street, Suite 1000
Phoenix, AZ 85018

*Attorney for Plaintiffs*

Mark A. Nadeau (No. 011280)
DLA Piper LLP (US)
2525 East Camelback Road
Esplanade II, Suite 1000
Phoenix, AZ 85016

Allison L. Kierman (No. 024414)
DLA Piper LLP (US)
2525 East Camelback Road
Esplanade II, Suite 1000
Phoenix, AZ 85016

Leon Medzhibovsky (*pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020

Airina Rodrigues (*pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020

*Attorneys for Defendants*


s/      Pat Kelly