UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| XY Skin Care & Cosmetics, LLC, an Arizona limited liability company, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Hugo Boss USA, Inc., a Delaware corporation, et al., <br><br> Defendants. <br> _____ <br> Hugo Boss USA, Inc., a Delaware corporation, et al., <br><br> Counterclaimants. <br><br> vs. <br><br> XY Skin Care & Cosmetics, LLC, an Arizona limited liability company, et al., <br><br> Counterdefendants. <br> _____ | No. CV-08-01467-PHX-ROS <br><br> **ORDER** |

For the following reasons, Defendants' Motion for Summary Judgment (Doc. 122) will be granted.

**BACKGROUND**

Plaintiff Micky Gutier owns a federal registration for the mark "XY Cosmetics" registered on December 7, 2004 for "cosmetics and non-medicated skin care preparations for men." (Docs. 123 and 141, at ¶¶ 7, 83). He also owns a federal registration for the mark

1  "XY Skin Care" registered January 25, 2005 for "non-medicated skin care preparations for
2  men." (Id., at ¶¶ 8, 113).[1]  Plaintiff XY Skin Care & Cosmetics LLC (the "LLC")
3  incorporated in Arizona on July 7, 2003. (Id., at ¶ 4). Plaintiffs Micky Gutier and Alberto
4  Gutier III (hereinafter "Albert Gutier") are the sole members of the LLC. (Id., at ¶ 5). Micky
5  and Alberto Gutier registered the Arizona trade name XY Skin Care & Cosmetics on June
6  3, 2002. (Id., at ¶ 6).[2]

7  Plaintiffs sell eyeliner pencils under the XY Cosmetics mark and skin care products
8  under the XY Skin Care mark. (Id., at ¶ 13). Plaintiffs purchase product inventory from
9  "white label" manufacturers, who manufacture generic products to which Plaintiffs then affix
10 their labels. (Id., at ¶ 29).

11 Since incorporating the LLC, Plaintiffs have made eight documented sales of skin care
12 or cosmetic products bearing their marks. (Id., at ¶ 10). All sales were to friends or family
13 members, and total $92.00. (Id., at ¶¶ 11, 18). Plaintiffs sold their products on consignment
14 through "Unique on Central," a boutique store in Phoenix, AZ. (Id., at ¶¶ 19-20). Initial
15 sales to Jeffrie Allan and Jed McNair were made in August and October of 2004, "within
16 days of Micky Gutier filing Statements of Use in connection with the prosecution of his
17 applications for the XY Marks." (Id., at ¶ 21). No other sales were made under Plaintiffs'

---

[1] Plaintiffs do not own or use any trademarks or trade names using the letters "XX" and admit the "XX Hugo" mark does not infringe on Plaintiffs' marks. (Id., at ¶ 9). Plaintiffs admit XY is a term used to refer to male sex chromosomes, and that when used in connection with Plaintiffs' products, the term XY communicates and describes the products as skin care and cosmetic products "for men." (Id., at ¶¶ 61-62, 64).

[2] The Arizona trade name registration listed February 2, 2002, the day Micky Gutier moved into his house, as the date of first use. (Id., at ¶¶ 126-28). However, Plaintiffs had not used the name title or designation "XY Skin Care & Cosmetics" as of that date. (Id., at ¶ 128).

1  marks until August of 2009, one year after this litigation was commenced. (Id., at ¶¶ 22-
2  23).[3]

3  Hugo Boss USA, Inc. and Hugo Boss Retail, Inc. (collectively "Defendants" or "Hugo
4  Boss") launched products bearing its XY Hugo and XX Hugo in September 2007. (Id., at
5  ¶ 47). The products consist of fragrances, shower gels, body lotions, after shave and
6  deodorant. (Id., at ¶ 48). Defendants do not offer a targeted skin care line or cosmetics
7  products under their XY Hugo and XX Hugo marks. (Id., at ¶ 49). Defendants own a U.S.
8  trademark registration for the mark "XY Hugo", which was approved for publication August
9  3, 2010. (Id., at ¶ 60).[4] Plaintiffs opposed Defendants' application for trademark
10  registration. (Doc. 141, at 19, ¶ 8).[5]

11  On August 8, 2008, Plaintiffs sued Defendants for trademark infringement and related
12  claims. Defendants counterclaimed for declaratory judgment and cancellation of Plaintiffs'
13  marks. Defendants have moved for summary judgment.

---

[3] Plaintiffs state they deny Defendants' statement of facts, paragraphs 22-23 and 27, but base their denial on the argument that other activities besides sales are relevant. The Court agrees and addresses Plaintiffs' other commercial activities later in this Order. Plaintiffs do not actually dispute Defendants' allegations regarding sales and confirm Plaintiffs' sales were "minimal." As such, there is no genuine issue of material fact as to the facts regarding sales. Sales in August and September 2009 totaled $70. (Id., at ¶ 23).

[4] Plaintiffs deny Defendants' statement of facts, paragraph 60, arguing Defendants were deceptive before the USPTO and have only won a temporary reversal of the decision to deny Defendants the "XY Hugo" mark. Plaintiffs do not deny Defendants presently own the trademark described. The proceedings before the USPTO are stayed pending an outcome in this lawsuit. While prosecuting their mark, Defendants were asked to disclaim, and did disclaim, the "XY" portion of the mark because the term "XY" is generic and/or merely descriptive. (Id., at ¶ 67). Plaintiffs deny Defendants' statement of facts, paragraphs 67-68, but do not dispute Defendants disclaimed the XY portion of their mark during their trademark prosecution. As such, there is no genuine issue of material fact.

[5] Defendants deny there was a formal opposition. (Doc. 147, at 21, ¶ 8). Reasonable inferences are drawn in Plaintiffs' favor.

- 3 -

**ANALYSIS**

**I.     Summary Judgment Standard**

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). The evidence of the non-moving party is to be believed, and all reasonable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). However, if the non-moving party bears the burden of proof at trial, the moving party's summary judgment motion need only highlight the absence of evidence supporting the non-moving party's claims. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 323-25). The burden then shifts to the non-moving party who must produce evidence sustaining a genuine issue of disputed material fact. *Id.*

**II.    No Genuine Issue of Material Fact on Trademark Infringement**

To establish trademark infringement, Plaintiffs bear the burden of establishing they own a valid, protectable mark, and Defendants are using a confusingly similar mark. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046-47 (9th Cir. 1999) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979)). "Registration does not create a mark or confer ownership; only use in the marketplace can establish a mark." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 979 (9th Cir. 2006) (citing *Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1454 (9th Cir. 1985)); *see also Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219, *as modified*, 97 F.3d 1560 (9th Cir. 1996) ("It is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services"). Use in commerce means "a bona fide sale or transportation in commerce . . . .

1  This requirement breaks down into two distinct elements: (1) Was the transaction upon
2  which the registration application was founded bona fide; and (2) if it was bona fide, was it
3  followed by activities proving a continuous effort or intent to use the mark." *Brookfield,*
4  174 F.3d at 1157.[6]  Use in commerce "includes (1) an element of actual use, and (2) an
5  element of display." *Id.* at 1159.

6  Plaintiffs have not demonstrated a genuine issue of material fact as to bona fide use
7  in commerce.  Plaintiffs' sales have been minimal token sales to friends.  The sales were at
8  the behest of Micky Gutier in order to apply for registration, rather than through typical
9  market participation.  Prior to this lawsuit, Plaintiffs made only one sale of a product under
10 each of their marks. (Docs. 123 and 141, at ¶¶ 78-81, 106).  Those sales were to Jed McNair
11 ("McNair") on October 6, 2004, and Jeffrie Allan ("Allan") on August 16, 2004. (Id.). Prior
12 to the sales, Micky Gutier told both Allan and McNair about the product and asked Allan and
13 McNair to make a purchase because Plaintiffs needed to make a sale of a product with the
14 marks across state lines in order to procure a United States trademark registration. (Id., at

---

[6] Prior to 1989, token use could be used to support an application for registration under some circumstances.  In 1989, however, Congress adopted a stricter standard to eliminate the "commercial sham" of token use. *Paramount Pictures Corp. v. White*, 31 USPQ2d 1768, 1776 (TTAB 1994) (even under old standard, "trademark rights were not created by sporadic, casual, and nominal shipments of goods bearing a mark.  Rather, there had to be a trade in the goods sold under the mark, or at least an active and public attempt to establish such a trade, in order for a trademark (and registrable rights) to exist.").  The Lanham Act now requires the higher standard of bona fide commercial use, even for registration. 15 U.S.C. § 1127 ("The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark.").

1  ¶¶ 80-81, 107-08).[7] The marks were affixed to the products with labels from an office supply
2  store. (Id., at ¶¶ 82, 109-11).[8]

3  After this lawsuit was commenced, nearly five years after the first sale, Plaintiffs sold
4  an additional six units in three sales transactions totaling $70. (Id., at ¶ 23). From 2004 to
5  2008, Plaintiffs made two invoice purchases totaling approximately $86. (Id., at ¶ 27).
6  Approximately one month prior to filing this lawsuit, Plaintiffs made an invoice purchase for
7  approximately 17 items totaling $119, and another invoice purchase for two items totaling
8  $357. (Id., at ¶ 27).

9  The Ninth Circuit uses a "totality of the circumstances test" to determine if and when
10 a mark was used in commerce. *Chance v. Pac-Tel Teletrac Inc.,* 242 F.3d 1151, 1159 (9th
11 Cir. 2001). The totality of Plaintiffs' acts must show use of a mark that is "sufficiently public
12 to identify or distinguish the marked goods in an appropriate segment of the public mind."
13 *Id.* (mailing 35,000 post cards insufficient to establish first use in commerce where mailings
14 resulted in only two token sales and no genuine effort made to exploit mark after sales).
15 "Nominal or token sales to relative and personal friends do not constitute a bona fide
16 commercial use of a trademark." *McCarthy on Trademarks and Unfair Competition* § 16:7
17 (9th ed., 2010) (citing *Jaffe v. Simon & Schuster*, 3 USPQ2d 1047, 1049 (S.D.N.Y. 1987)
18 (nominal sales of board games to friends and family not bona fide commercial transactions
19 to establish use)). Mere preparatory use is also insufficient. *Brookfield*, 174 F.3d at 1052
20 (using mark to reserve domain name and in preparatory e-mail to customers and lawyers
21 insufficient). Plaintiffs' sales have been nominal token sales to personal friends. Plaintiffs

---

[7] Mickey Gutier's application for XY Skin Care alleged June 3, 2002, Micky Gutier's birthday, was the date of first use. (Docs. 123 and 141, at ¶ 94). On November 2, 2004, Micky Gutier filed a Statement of Use alleging November 1, 2004 was the date of first use. (Id., at ¶ 104).

[8] Plaintiffs deny Defendants' statement of facts, paragraphs 110. Reasonable inferences are drawn in the Plaintiffs' favor as to whether the image was digitally altered.

- 6 -

1 have been preparing to enter the market, but have not entered the market to distinguish their
2 mark in the public mind.

3 In addition, Plaintiffs' promotion of their products is "effectively nonexistent." (Id.,
4 at ¶¶ 31). It is limited to word-of-mouth advertising to friends and family. (Id.). Plaintiffs
5 have no advertising budget and have never advertised in newspapers, magazines, periodicals
6 or billboards. (Id., at ¶¶ 31-32). In 2006, a two-sentence editorial blurb appeared in Outlook
7 Magazine, a Phoenix-based publication. (Id., at ¶ 33). The blurb was free, was a favor from
8 Micky Gutier's close friend, and stated XY Skin Care & Cosmetics was not yet an operative
9 business. (*Id.*, at ¶ 34). Plaintiffs own the domain name www.xyskincare.com. (Id., at ¶
10 35). The website has one page with no active links. The page shows a man laying on a bed
11 with a laptop, has a banner that says "Coming Soon - Order your XY Products Online." (Id.,
12 at ¶ 36). It does not show or describe XY Skin Care Products or identify the source of the
13 product. (Id.). The website content has not been updated since 2005. (Id., at ¶ 37). The
14 website has never been interactive or supported e-commerce and does not list contact
15 information. (Id., at ¶ 38). The only way to order Plaintiffs' products is directly through
16 Micky or Alberto Gutier. (Id., at ¶ 40).[9]

17 Further, Plaintiffs do not have a price list or business plan and do not know if they
18 make a profit from sales of their products. (Id., at ¶ 42). Plaintiffs have not approached any
19 standard retail channels to discuss distribution of their products. (Id., at ¶ 43).[10] Micky
20 Gutier testified he has not gotten the business "off the ground." (Id.., at ¶ 44).

21 Moreover, Plaintiffs have not: collected or paid sales tax; filed a tax return; obtained
22 an employee identification number; or registered for a transaction privilege tax. (Id., at ¶¶

---

24 [9] Again, Plaintiffs object to Defendants' statement of facts, paragraph 40, but do not
25 challenge the content of those facts, only the meaning. As such, there is no genuine issue of material fact as to these facts.

26 [10] Plaintiffs deny Defendants' statement of facts, paragraph 43, relying on an Exhibit:
27 a time line that is not in affidavit form and is hearsay for which Plaintiffs have offered no exception. Importantly, the time line does not substantively challenge the facts to which the
28 Court cites. There is no genuine issue of material fact as to these facts.

- 7 -

144-47).[11] "Unique on Central" is no longer open for business. (Id., at ¶ 149). Plaintiffs have not accounted for any income derived from sales of their products, nor paid taxes on such products. (Id., at ¶ 155).

Plaintiffs' two sales in 2004 were to two friends who learned about the product from Plaintiffs and purchased the product at Plaintiffs' request to help Plaintiffs complete their registration applications. Under the totality of the circumstances, the sales were not bona fide and not in the ordinary course of public trade. *Chance*, 242 F.3d at 1156-59; *McCarthy on Trademarks* § 16:7; *Bazaar Del Mundo,* 448 F.3d at 1125; *Jaffe*, 3 USPQ2d at 1049 (five sales to two friends not bona fide commercial use); *ZaZu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992) ("a few [sales] over the counter . . . and a few more mailed to friends" did not link the "mark with [plaintiff's] product in the minds of consumers nor put other producers on notice."); *Paramount Pictures*, 31 USPQ2d at 1776 (nominal sales insufficient).

Further, the two sales to friends were not followed by a continuous effort to use the mark. Plaintiffs engaged in no advertising beyond word of mouth. Plaintiffs made no other sales for approximately five years. Invoice purchases have been minimal and concentrated at or after the initiation of this lawsuit. This argues against finding a genuine issue of material fact as to bona fide use. *See Chance*, 242 F.3d at 1156-60 (no continuous exploitation of mark where party waited 18 months to order inventory); 15 U.S.C. § 1127 (three years of consecutive non-use is prima facie evidence of abandonment); *Burgess v. Gillman*, 78 USPQ2d 1773, 1777 (D. Nev. 2006) (bona fide use of mark must be in ordinary course of trade, "not made merely to reserve a right in a mark"). Plaintiffs did open a bank account, register a domain name and register a trade name with the state of Arizona, but such preparatory steps do not constitute bona fide commercial use that would create an identity

---

[11] Plaintiffs admit these facts, but also allege they filed a Form 1065 "U.S. Return of Partnership Income" with the I.R.S. on behalf of XY Skin Care & Cosmetics LLC in 2008. (Doc. 141, at ¶ 32, Ex. 32). The Form 1065 is not signed. Even if the Court infers this Form 1065 were filed, it does not change the Court's ruling.

- 8 -

in the consuming public. *E.g., Brookfield*, 174 F.3d at 1052. In their own words, Plaintiffs never "got off the ground." Plaintiffs never did more than prepare to use their mark in commerce.

The totality of the circumstances show Plaintiffs have failed to demonstrate a genuine issue of material fact as to whether they established bona fide use of the mark. *Chance,* 242 F.3d at 1159.; *Dep't of Parks and Recreation for the State of Calif. v. Bazaar Del Mundo, Inc*., 448 F.3d 1118 (9th Cir. 2006) (priority of use requires party show (1) "that it actually adopted and used the marks in commerce prior to [another party's] registration in such a manner that sufficiently associated the marks with the goods or services; and (2) its use of the marks was continuous and not interrupted."); *see also La Societe Anonyme des Parfums le Galion v. Jean Patou Inc*., 495 F.2d 1265, 1272 (2d Cir. 1974) (ongoing minimal sales, totaling 89 bottles of perfume in 29 years for $600 in gross sales and $100 in profit was not the "kind of bona fide use intended to afford a basis for trademark protection."); *Columbia Pictures Inds., Inc. v. Miller*, 211 USPQ 816, 819 (TTAB 1981) (single sale of product not bona fide commercial transaction and not followed by commercial use); *Bellanca Aircraft Corp. v. Bellanca Aircraft Eng'g, Inc.,* 190 USPQ 158, 167 (TTAB 1976) (two sales and no subsequent commercial use insufficient).[12]

### III.   No Genuine Issue of Material Fact on Plaintiffs' State Law Claims

In their Motion for Summary Judgment, Defendants argue Plaintiffs' state law claims fail because Plaintiffs have not offered any evidence demonstrating they own a service mark

---

[12] Plaintiffs' cases prior to the Lanham Act amendments are distinguishable. In addition, Plaintiffs cite cases that do not stand for the proposition for which Plaintiffs cite them. For example, Plaintiffs cite *Dial-A-Mattreess Operating Corp. v. Mattress Madness, Inc*., 841 F.Supp. 1339 (E.D.N.Y. 1994), for the proposition that a party's use may be sufficient even after seven years of non-use. However, in *Dial-A-Mattress*, the court stated the seven years of non-use was a "cursory allegation" of an "unspecified" period for which "no proof . . . has been proffered" and the record was "devoid of any evidence of non-use." First, the case does not stand for the proposition Plaintiffs assign to it. Second, here, Plaintiffs have provided all evidence of documented sales to Defendants (Docs. 123, 141 ¶ 156), and Plaintiffs have used that evidence to show non-use. *See* (Doc. 146, at n. 5-8) (distinguishing cases and identifying inaccurate descriptions in Plaintiffs' brief).

- 9 -

under A.R.S. § 44-1451. (Doc. 122, at 17). Plaintiffs do not respond to this argument. (Doc. 140). As such, summary judgment is appropriate under Local Rule 7.2(i), deeming failure to respond consent to granting the motion.

Similarly, Plaintiffs did not respond to Defendants' argument that Plaintiffs cannot demonstrate a likelihood of confusion. (Docs. 122, 140). Defendants set forth the *Sleekcraft* factors and argue each one. Plaintiffs' response ignores these arguments. Plaintiffs instead make three legal arguments titled: (1) Who has the burden on cancellation?; (2) Is "very minimal" commerce legally sufficient under the Lanham Act?; and (3) Is "profit" required to prove Lanham Act "use in commerce"? (Doc. 140). None of these challenges Defendants' Motion based on no likelihood of confusion. As such, summary judgment on the state law claims is appropriate.

## IV.   Defendants Have Priority

Plaintiffs lack valid, protectable rights because they did not engage in bona fide commercial use. There is no factual dispute that Defendants made a full-scale launch of the XY Hugo and XX Hugo fragrance line in September 2007, or that Defendants followed that launch with continuous use of the mark. (Id., at ¶¶ 50-54). As such, Defendants have priority in the XY Hugo and XX Hugo marks.

Defendants will be granted summary judgment on their counterclaims for (1) declaration of trademark invalidity; (2) declaration of noninfringement; (3) cancellation of Micky Gutier's federal registrations U.S. Trademark Registration No. 2,921,574 for "XY Skin Care" and U.S. Trademark Registration No. 2,909,091 for "XY Cosmetics" under 15 U.S.C. § 1119; and (4) cancellation of Plaintiffs' Arizona service mark registration under A.R.S. § 44-1448(3)(a) and (b) for abandonment and non-ownership of the mark. Defendants allege Count Five for fraud but do not seek fraud damages. A review of the record shows Defendants' fraud allegations are an attack on the registration, not an actual claim for damages. The Court did not rely on these allegations in this Order. Therefore, this Order cannot be cited for the proposition that Plaintiffs committed fraud.

Accordingly,

1  **IT IS ORDERED** Defendants' Motion for Summary Judgment (**Doc. 122**) is
2  **GRANTED.** The **Clerk of the Court** is directed to enter **judgment** in favor of Defendants.
3  DATED this 25th day of February, 2011.

_____
Roslyn O. Silver
Chief United States District Judge